**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**


**CHINA MART USA LLC**
a California limited liability company,

    Plaintiff and Counterclaim Defendant,

v.

**AMERICAREERS, LLC d/b/a CHINA MART, LLC**
a Michigan limited liability company,

    Defendant and Counterclaim Plaintiff.

**CASE NO: 1:12-cv-00968**

**Hon. Robert J. Jonker**

_____/

John A. VanOphem (P48804)
Attorney for Plaintiff and Counterclaim
Defendant
**Bejin VanOphem & Bieneman PLC**
300 River Place Dr., Ste 1650
Detroit, MI 48207
Phone: (313) 528-4882
Fax: (313) 528-6982
vanophem@bvbip.com

Nicholas D. Bowman (P74964)
Attorney for Defendant and Counterclaim
Plaintiff
**Waters & Associates PLC**
305B Waters Building
161 Ottawa Ave., N.W.
Grand Rapids, MI 49503
Tel: (616) 242-9550
Fax: (616) 855-0954
nick@waters-ip.com

_____/


**AMERICAREERS LLC'S BRIEF IN SUPPORT OF**
**ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.   INTRODUCTION……………………………………………………………. 1

II.  STATEMENT OF UNDISPUTED FACTS…………………………………….. 1

III. ARGUMENT

   A. The Standard For Summary Judgment…………………………………….. 5

   B. Defendant Has Superior Rights In and To "ChinaMart.com"………………….. 5

   C. ALL Plaintiff's Claims Are Barred By the Statute of Limitations and Laches… 6

   D. The Term "China Mart" Is Generic When Referring to as "China Market" or "China Trading Center"……………………………………………………. 9

   E. Plaintiff's Alleged Marks "China Mart" and "ChinaMart" Are Generic When Used In Connection With Plaintiff's Recited Services in Plaintiff's Industry Context……………………………………………………………………. 12

     a) Plaintiff's Alleged Marks Are Generic Based On The Two-Step Inquiry… 13

     b) Plaintiff's Alleged Marks Are Generic Based On "Who-are-you/What-are-you" Test………………………………………………………………. 17

     c) Plaintiff Has Primarily Used Term "China Mart" or "ChinaMart" In The Generic Sense of The Word…………………………………………… 18

     d) Competitors' Needs to Use The Term "China Mart" To Describe Their Businesses………………………………………………………….... 19

   F. Plaintiff's Registrations Should Be Cancelled Because Its Alleged Marks Are Merely Descriptive and Because Plaintiff Obtained Its Registrations Fraudulently…………………………………………………………….. 20

   G. Plaintiff's Alleged Marks Were Not Distinctive at the Time of Registration of The Domain Name "CHINAMART.COM", Defendant's Use of its Domain Name is a Fair Use and Lawful, and Defendant Has Not Violated the ACPA… 22

   H. Defendant is Entitled to an Award of Attorney Fees, Damages, and Costs……. 24

IV.  CONCLUSION…………………………………………………………….. 25

# TABLE OF AUTHORITIES

**Cases**

*A. J. Canfield v. Honickman,* 808 F.2d 291 (3rd Cir. 1986) .................................. 19, 20

*Advertise.com, Inc. v. AOL Advertising, Inc.,* 616 F. 3d 974 (9th Cir. 2010)........... 17, 18

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)............................................. 5

*Audi AG v. D'Amato,* 469 F.3d 534 (6th Cir. 2006)................................................. 7

*Boston Duck Tours, LP v. Super Duck Tours, LLC,* 531 F. 3d 1 (1st Cir. 2008)…... 18

*Celotex Group v. Catrett,* 477 U.S. 317 (1986)........................................................ 5

*Chirco v. Crosswinds Communities, Inc.,* 474 F. 3d 227 (6th Cir. 2007)................. 7

*Defiance Button Mach. Co. v. C & C Metal Prods. Corp.,* 759 F.2d 1053 (2d
Cir.1985) ................................................................................................................... 6

*E-Systems, Inc. v. Monitek, Inc.,* 720 F. 2d 604 (9th Cir. 1983) ............................. 6

*Filipino Yellow Pgs. v. Asian Journal Publications,* 198 F. 3d 1143, 1147 (9th Cir.
1999).......................................................................................................................... 17

*GoPets Ltd. v. Hise,* 657 F. 3d 1024,1030 (9th Cir.  2011)...................................... 23

*H. Marvin Ginn Corp. v. International Ass'n of Fire Chiefs, Inc.,* 782 F.2d 987,
(Fed. Cir. 1986) ........................................................................................................ 13

*Herman Miller v. Palazzetti Imports and Exports,* 270 F. 3d 298 (6th Cir.
2001) ......................................................................................................................... 7

*Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F. 3d 813(7th Cir.1999)............................. 7

*In re Abcor Dev. Corp.,* 588 F.2d 811 (CCPA 1978).............................................. 21

*In re Am. Fertility Soc'y,* 188 F.3d 1341 (Fed. Cir. 1999) ...................................... 10

*In re Bayer Aktiengesellschaft,* 488 F. 3d 960 (Fed. Cir. 2007) ............................. 21

*In re CyberFinancial.Net Inc. ,* 65 USPQ2d 1789 (TTAB 2002) ........................... 13

*In re Gyulay,* 820 F.2d 1216 (Fed. Cir. 1987)......................................................... 20

*In re MBNA Am. Bank N.A.,* 340 F.3d 1328 (Fed. Cir.2003) ................................. 21

*In Re Reed Elsevier Properties Inc,* 482 F.3d 1376 (2007) ..................................... 18

*In re Ryan M. Wiederstein,* Serial No. 85193002 (TTAB, 2013) ............................ 13

*In re Web Communications,* 49 USPQ2d 1478 (TTAB 1998) ................................. 13

*ITC Ltd. v. Punchgini, Inc.,* 482 F. 3d 135 (2nd Cir. 2007) .................................... 6

*Malcolm Nicol & Co. v. Witco Corp.,* 881 F.2d 1063 (Fed. Cir. 1989) ................. 6

*Murphy Door Bed Co. v. Interior Sleep Systems, Inc.,* 874 F.2d 95 (2d Cir. 1989) .. 15

*Nartron Corp. v. Stmicroelectronics Inc.,* 305 F. 3d 397 (6th Cir. 2002) ................ 7, 9, 19

*Retail Services, Inc. v. Freebies Publishing,* 364 F. 3d 535 (4th Cir. 2004) ............ 18, 22, 24

*Sprinklets Water Center, Inc. v. McKesson Corp.,* 806 F.Supp. 656
(E.D.Mich.1992) …………………………………………………………………… 6, 7

*SS Kresge Co. v. United Factory Outlet, Inc.,* 598 F. 2d 694 (1st Cir. 1979)........... 10

*Stork Restaurant v. Sahati,* 166 F.2d 348 (9th Cir. 1948) ....................................... 6

*Tandy Corp. v. Malone & Hyde, Inc.,* 769 F. 2d 362(6th Cir. 1985)........................ 8

*Therma-Scan, Inc. v. Thermoscan, Inc.,* 295 F. 3d 623(6th Cir. 2002)................... 7

*Weiss Noodle Co. v. Golden Cracknel and Specialty Co.,* 290 F. 2d 845 (CCPA
1961) ......................................................................................................................... 10

**Statutes**

15 U.S.C. §1052 (e)(1)……………………………………………….…..20, 22
15 U.S.C. §1057(c) …………………………………………...…………….6
15 U.S.C. §1064(1)………………………………………………..……………22
15 U.S.C. §1064(3)…………………………………………...……….20, 22
15 U.S.C. §1120……………………………………………...……….22, 25
15 U.S.C. §1125(d)(1)………………………………………………….22, 23

NOW COMES Defendant, AmeriCareers LLC d/b/a China Mart, LLC (hereinafter "Defendant", "AMC" or "ACL"), by and through its undersigned counsel, and in support of Defendant's Motion for Partial Summary Judgment ("Motion") states the following:

## I.      INTRODUCTION

Defendant submits this Brief in Support of Defendant's Motion for Partial Summary Judgment on Defendant's claims, defenses and affirmative defenses as stated in its Motion, because no genuine issues of material fact remain for trial, and as such, Defendant is entitled to summary judgment as a matter of law. All claims of China Mart USA LLC (hereinafter "Plaintiff" or "CMU") should be dismissed with prejudice, and U.S. Reg. Nos. 3537975 and 4011626 should be cancelled.

Summary judgment is proper in this case because the evidence of record makes it clear the terms "China mart" and "Chinamart" that Plaintiff has claimed the exclusive right to use are generic or highly descriptive, and have been used since at least the 1850's. Furthermore, Defendant's domain name "chinamart.com" was registered and used in commerce long before the existence of Plaintiff. Plaintiff, a latecomer, missed out on the opportunity to register the domain name "chinamart.com" and is now attempting to prevent a senior user from using a generic term. Accordingly, for these reasons and for the reasons set forth below, there is no genuine issue of material fact and Defendant is entitled to summary judgment as a matter of law.

## II.      STATEMENT OF UNDISPUTED FACTS

<u>Defendant's predecessors' uses of "ChinaMart.com"</u>: Defendant's domain name "chinamart.com" was initially registered on January 23, 1998 (see Doc #6-5 for Exhibit 7). Defendant was unable to collect information about the use of the domain name "chinamart.com"

prior to the year 2005. However, it is known that sometime prior to April 2005, Mr. Gary

Rohland, a resident in Florida, bought the domain name "chinamart.com." Through his

established business "Florida eCommercials Inc.", Mr. Rohland had used "ChinaMart.com" as a

trade name in commerce since April 2005 (see Exhibit B for Rohland Dec. and its Exhibit 1).

According to Mr. Rohland, one of his first uses of "ChinaMart.com" beginning in April 2005

was to "offer internet commercial advertising services and develop video commercials for use on

internet websites." He offered the services of Chinese speaking actors to assist in making

commercials. During some periods from 2005 to 2007, Mr. Rohland also used "ChinaMart.com"

to advertise third party services related to ecommerce, online shopping, Chinese business,

Chinese trade and Chinese travel (see Exhibit B). On May 7, 2007, Mr. Rohland registered his

company "ChinaMart.com Inc." in Florida and began to "develop www.chinamart.com as a

distinctive business to business trade portal with the goal of having a presence in both China and

the U.S. to better service the business communities of both countries" (see Exhibit B).

    Defendant's use of "ChinaMart.com": On December 25, 2007, Defendant's president Mr.

Da Ouyang acquired "ChinaMart.com" from Mr. Rohland, and the domain was transferred to Mr.

Ouyang on January 2, 2008 (see Exhibit A for Ouyang Declaration ("Ouyang Dec.") ¶ 7). On

December 26, 2007, Mr. Ouyang created a company "China Mart, LLC" in Michigan (see

Doc#1-3). Defendant's intention with this acquisition was to use "ChinaMart.com" to build an

online trading and shopping site for selling goods and products made in China. Since the

acquisition, Defendant has continued the use of ChinaMart.com in commerce for advertising

third party services related to China business, China trading and online shopping  during 2008,

2009 and 2010 (see Ouyang Dec. ¶¶ 8,9). Since late July 2010, the website "ChinaMart.com" has

been integrated with the US internet retailer, Amazon.com, and has been used as Defendant's

online China trading and shopping center, for selling goods available on Amazon.com's website, many of which are made in China (see Ouyang Dec. ¶¶ 10,26 and Exhibits C and A-26-4).

Defendant had no knowledge about the existence of Plaintiff or Plaintiff's use of the term "China Mart" or "ChinaMart" until Defendant received a letter from Plaintiff's attorney in July 2010. Nor has Defendant approached Plaintiff or any third party, in an attempt to sell its domain name to them. While Defendant is not aware of any incidents of actual confusion, Defendant voluntarily added a disclaimer on every page of Defendant's website, after this lawsuit started, to avoid any possible confusion (see Ouyang Dec. ¶¶ 11,12,13,18 and Exhibit C).

Plaintiff's use of its alleged marks: Plaintiff registered its domain "chinamartusa.com" on June 10, 2007 (see Doc #6-3) and registered its company "China Mart USA LLC" on June 12, 2007 in the state of California (see Doc #6-2). On June 12, 2007, Plaintiff filed an application to register its alleged mark "CHINA MART" (Plaintiff has used it as "China Mart") on an "intent-to-use" basis with the U.S. Patent and Trademark Office (hereinafter "the PTO") and it was registered on November 25, 2008 (Reg. No. 3537975). Plaintiff filed another application to register the alleged mark "CHINAMART" (Plaintiff has used it as "ChinaMart") with the PTO on December 23, 2010 and it was registered on August 16, 2011 (Reg. No. 4011626). In both registrations, Plaintiff claimed its first use date as September 1, 2006. Service descriptions for these two registrations at issue (the "recited services") can be found in Doc #1-2.

In December 2007, Plaintiff applied to register "China Mart" as a trademark in China and the application was refused by the Chinese trademark office (see Ouyang Dec.¶ 23, Exhibit A-2).

Plaintiff has admitted it has used "China Mart" and "ChinaMart" interchangeably for its services (see Exhibit D-1 for Req.No.30). Plaintiff "chose 'China Mart' and 'ChinaMart' as a

name to suggest the types of services ChinaMart was to provide" (see Exhibit D-2 for Interrogatory No.11). Plaintiff admitted that it had not used its alleged marks "China Mart" or "ChinaMart" prior to the year 2006 (see Exhibit D-3 for Req. No.1). In 2006, Plaintiff became aware of the use of "ChinaMart.com" by Defendant's predecessor, Mr. Rohland (see Exhibit D-2 for Interrogatory No. 14, and Exhibit D-4 for Interrogatory No.1). When Plaintiff chose to use www.chinamartusa.com for its business, Plaintiff started noticing that customers confused its website with the www.chinamart.com website (see Exhibit D-4 for Interrogatory No.1). Plaintiff has used "China Mart Los Angeles" (or "CMLA") for its business name (see below). Plaintiff's customers are "factories from China and USA wholesalers who buy from" Plaintiff (see Exhibit D-2 for Interrogatory No.5). Plaintiff has claimed that its ChinaMart is an "international trading center" (see below). As stated by Plaintiff, Plaintiff's services primarily involve the facilitation of trading with China:

"China Mart's main goal is to grow its Chinese Manufactures sales in the US…" (see Doc #6-5 for Exhibit 9 on Page ID#103-105)

"China Mart(TM) will assit Chinese companies' growth and investment for entry into the U.S. market. CMLA provides selling/ showroom offices while also providing a complete marketing, management and administrative service packages for Chinese companies wishing to sell direct and establish a presence in the U.S." (see Doc#6-5 for Page ID#108)

"ChinaMart® Los Angeles has launched, …bringing Chinese companies into the U.S…. It is now a fully operational physical and virtual international trading center , utilizing the ChinaMart® Los Angeles facility next to LAX, as well as the strong website presence …" (see Doc#6-4 for Page-ID#68).

"What is ChinaMart?          ChinaMart is a service and support platform to facilitate sales of U.S. and Chinese products between both countries." (see Ouyang Dec. ¶¶ 24 and Exhibit A-3)

"ChinaMart's primary directive is to serve as a bridge and resource to sell large quantities of product to the U.S. and Chinese markets, while providing 'After-Sales Customer Service' that is essential when selling in the US markets…….

Company Profile      Since 2006, ChinaMart® has been the first USA platform dedicated to sales of U.S. and Chinese products in a variety of areas such as furniture, electronics and many others." (see Exhibit D-3 for Req.No.6 for Bates Nos. AMC000025-AMC000026)

# III.    ARGUMENT

## A.  The Standard For Summary Judgment

Summary judgment is appropriate where, as here, there is "no genuine dispute as to any material fact", and the moving party "is entitled to judgment as a matter of law" Fed. R. Civ. P. Rule 56. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Group v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met the initial burden, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the opposing party's "evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

## B.  Defendant Has Superior Rights In and To "ChinaMart.com"

As stated above and as shown in Rohland's Declaration and its Exhibit 1, as of at least April 2005, "ChinaMart.com" was used in interstate commerce as a trade name by Mr. Rohland's established business "Florida eCommercials Inc.". Since then, "ChinaMart.com" has been continuously used in interstate commerce as a trade name by Mr. Rohland's company "ChinaMart.com Inc." and by Defendant "China Mart, LLC" for services including advertising, marketing, China trading, and online shopping (see Exhibit B and Ouyang Dec. ¶¶ 5-10). In Plaintiff's two federal registrations, Plaintiff claimed its alleged first use date as September 1, 2006, and it further admitted it had not used the alleged marks "China Mart" or "ChinaMart" prior to 2006 (see Doc#1-2, Doc#6-3 and Exhibit D-3 for Req. No.1). As such, Defendant is a senior user of "ChinaMart.com" and has thereby acquired common law rights superior to the rights of Plaintiff, a latecomer. The law is clear that "[a] prior tradename user does not have to prove direct or market competition with the latecomer in order to establish priority in its

tradename." *See E-Systems, Inc. v. Monitek, Inc.*, 720 F. 2d 604, 606 (9th Cir. 1983); *See also Stork Restaurant v. Sahati*, 166 F.2d 348, 355 (9th Cir. 1948). "Thus, even prior use by opposer of the term as a trade name ... or use in advertising analogous to trademark use, may be sufficient to preclude registration of that term to a subsequent user." *See Malcolm Nicol & Co. v. Witco Corp.*, 881 F.2d 1063, 1065(Fed. Cir. 1989). In addition, the Lanham Act at 15 U.S.C. § 1057(c) not only protects prior users from others' claims of trademark rights, but also entitles the prior user's trademark rights. *See ITC Ltd. v. Punchgini, Inc.*, 482 F. 3d 135, 146 (2nd Cir. 2007) ("Thus, so long as a person is the first to use a particular mark to identify his goods or services in a given market, and so long as that owner continues to make use of the mark, he is 'entitled to prevent others from using the mark to describe their own goods' in that market."); *see also Defiance Button Mach. Co. v. C & C Metal Prods. Corp.*, 759 F.2d 1053, 1059 (2d Cir.1985). Consequently, Plaintiff should be barred from using its alleged marks.

Accordingly, by virtue of the prior use and the continuing use of "ChinaMart.com" in interstate commerce by Defendant and its predecessor since April 2005, Defendant's rights in and to "ChinaMart.com" are superior to Plaintiff's rights in Plaintiff's alleged marks. As such, all Plaintiff's claims must be dismissed as a matter of law.

**C. ALL Plaintiff's Claims Are Barred By the Statute of Limitations and Laches**

Because the Complaint was brought prejudicially late, Plaintiff's claims are barred by the statute of limitations (3 years in the state of Michigan) and laches. *See Sprinklets Water Center, Inc. v. McKesson Corp.*, 806 F.Supp. 656, 663 (E.D.Mich.1992) ("The statute of limitations in a trademark case is that for injury to personal property…" "Under Michigan law, the period is three years."); *see also Herman Miller v. Palazzetti Imports and Exports*, 270 F. 3d 298,321 (6th Cir. 2001); *see also Ford Motor Co. v. Catalanotte*, 342 F. 3d 543,550 (6th Cir. 2003) ("The

analogous state statute of limitations in this case is three years."); *see also Chirco v. Crosswinds Communities, Inc*., 474 F. 3d 227,233 (6th Cir. 2007).

When evaluating a defense of laches, courts look to (1) the amount of time between when the plaintiff knew or should have known of the infringement and when it asserted its claim; (2) whether this delay was reasonable or excusable; and (3) whether the defendant has been prejudiced by the delay. *See Audi AG v. D'Amato*, 469 F.3d 534, 545–46 (6th Cir. 2006); *see also Nartron Corp. v. STMicroelectronics, Inc*., 305 F.3d 397, 408 (6th Cir. 2002).

First, Plaintiff knew of Defendant's predecessor's use of the domain "chinamart.com" since 2006 (see Exhibit D-2 for Interrogatory No. 14). When Plaintiff found out the domain name "chinamart.com" was used by someone, Plaintiff chose to use "chinamartusa.com" for its business. Then Plaintiff started noticing some consumers had confused its website with Defendant's predecessor's use of [www.ChinaMart.com](www.ChinaMart.com) (see Exhibit D-4 for Interrogatory No.1).
[1] Plaintiff filed this lawsuit on September 10, 2012. Thus, the amount of time of Plaintiff's delay, by its own admission, is over 5 years. As such, all of Plaintiff's state law claims are barred (by the Michigan statute of limitations) and its federal claims are presumptively barred. *See Hot Wax, Inc. v. Turtle Wax, Inc*., 191 F. 3d 813,821(7th Cir.1999) ("[F]ederal courts have referred to analogous state statutes of limitations to determine whether a presumption of laches should apply."); *see also Tandy Corp. v. Malone & Hyde, Inc., 769 F. 2d 362,365(6th Cir. 1985)* ("[A]n action is barred if not brought within the period of the [analogous state] statute of limitations.")

Second, it is undeniable that Plaintiff has lacked diligence in asserting its alleged trademark rights. The times when Plaintiff could have taken legal action, but did not, are

---

[1] Since Plaintiff is a junior user of "ChinaMart", such confusion is caused by Plaintiff's later adoption of the alleged mark "ChinaMart", and therefore would constitute "reverse confusion", for which Plaintiff, and not Defendant, is liable. *See Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F. 3d 623,630 (6th Cir. 2002)

numerous: Plaintiff did not take legal action when it first became aware of Defendant's predecessor's commercial use of "ChinaMart.com" in 2006 (see Exhibit D-2 for Interrogatory No. 14). Plaintiff did not take legal action in 2007 even when it started noticing consumer confusion between the two sites "www.chinamartusa.com" and www.chinamart.com" (see Exhibit D-4 for Interrogatory No.1). Plaintiff did not take legal action when Defendant's predecessor created a "ChinaMart.com Inc." in May 2007; Plaintiff did not take legal action when "ChinaMart.com Inc." was developing an online portal "www.ChinaMart.com" for China trading business in May 2007 (see Exhibit B). Plaintiff did not take legal action when Defendant acquired "ChinaMart.com" in December 2007 (see Ouyang Dec. ¶ 7). Plaintiff did not take legal action when Defendant created "China Mart, LLC" in 2007. Defendant did not take legal action when Defendant continuously used its website for providing commercial advertising related to China business, China trading and online shopping since February 2008 (see Ouyang Dec.¶¶ 9,10). Instead, Plaintiff permitted the continuing commercial use of ChinaMart.com by Defendant's predecessors and Defendant to go unchecked for over 5 years. Plaintiff had plenty of opportunities to take a legal action, but instead, sat idly and chose not to monitor or challenge Defendant's predecessors' or Defendant's uses of "ChinaMart.com" in commerce. Thus, Plaintiff clearly lacks of diligence [2] [3] and its delay is unreasonable.

---

[2] Even up to now, Plaintiff still allows third parties' websites www.china-mart.com, www.chinamart.net, www.china-mart.us, www.chinamart.co, and www.chinesemart.com to provide China trading, marketing, shopping, financial and legal services (see Ouyang Dec. ¶¶ 21,25-30 and Exhibits A-4 – A-9), which are similar to Plaintiff's services. This fact has also estopped Plaintiff from claiming its alleged rights against Defendant.

[3] As is customary, Plaintiff should have done a full trademark search (i.e. federal, state, and common law searches) on the term "China Mart" before it filed its application with the PTO on June 12, 2007. Plaintiff either failed to do such a search which would have yielded several unfavorable results (e.g., the fact that "ChinaMart.com" has been used in interstate commerce for advertising, marketing, shopping and China trading services by Defendant's predecessor since April 2005, and the fact that the brand "Best China Mart" ("BestChinaMart.com") had been used for selling electronics by a third party in California since May 2006 (see Ouyang Dec. ¶ 30 and Exhibit A-9)), or Plaintiff did perform such a search and, despite its finding, Plaintiff went ahead and registered its alleged marks

Third, Plaintiff brought this suit only after Defendant had used "ChinaMart.com" for online commerce, had been in business for nearly 5 years, and had used its tradename "China Mart, LLC" since 2007 (see Ouyang Dec. ¶¶ 6,8-10). Plaintiff's long delay is unreasonable and caused prejudice to Defendant because Defendant has invested a considerable amount of time and money in its ChinaMart.com business. Acquisition of "ChinaMart.com" alone cost Defendant thousands of dollars. Furthermore, Defendant has already fully developed its online China trading and shopping center www.ChinaMart.com (see Ouyang Dec. ¶¶ 7,10). Had Plaintiff taken legal action in 2006 when Plaintiff first noticed the commercial use of "ChinaMart.com" by Defendant's predecessor (see Exhibit D-2 for Interrogatory No. 14), or had Plaintiff taken legal action in 2007 when it first noticed consumer confusion (see Exhibit D-4 for Interrogatory No.1), or had Plaintiff done its diligence to monitor and challenge the use of "ChinaMart.com" sooner, Defendant would not have invested so much into acquiring and fully developing the commercial website. In addition, Plaintiff's long delay has caused Defendant extra cost and difficulty in collecting information from those who may have relevant information to support Defendant's case (see Ouyang Dec. ¶¶ 19,20). Thus, Plaintiff's delay is unreasonable and has clearly caused prejudice to Defendant. *See Nartron Corp. v. STMicroelectronics, Inc*., 305 F. 3d 397,408 (6th Cir. 2002) ("[A] delay beyond the three-year statutory period is presumptively prejudicial and unreasonable"). As such, all Plaintiff's claims are barred by the statute of limitations and the doctrine of laches as a matter of law.

**D.** **The Terms "China Mart" and "ChinaMart" are Generic When Referring to as "China Market" or "China Trading Center"**

---

and falsely claimed the exclusive right to use the alleged marks, disregarding Defendant's and other third parties' superior rights.

The term "China mart" is a combination of the two generic words. According to the American Heritage Dictionary of The English Language (4th Edition), the word "China" refers to "a country of eastern Asia" (see Exhibit E). And Plaintiff had already disclaimed the term "China" in its registration (Reg. No. 3537975). Thus, it is undisputed that "China" is a generic word referring to a country. According to the same dictionary, the word "mart" refers to "1. A trading center; a market. 2. A place where goods are sold; a store" (see Exhibit E). It is also beyond dispute that the word "mart" is generic when referring to a market or trading center, as at least one court has explicitly held. *See SS Kresge Co. v. United Factory Outlet, Inc.*, 598 F. 2d 694, 696 (1st Cir. 1979) ("A survey of well-known dictionaries reveals that the term 'mart' is generic since it is another word for store or market").

Additionally, the meaning of the term "China mart" is nothing more than the sum of the ordinary meanings of these two generic words and does not make the composite term "China mart" non-generic. Rather, it reinforces the generic nature of the term "China mart", namely, a China market or China trading center. As such, the composite term "China mart" is generic. Similarly, for the term "Chinamart" (or "China-mart" or "China-Mart" or "ChinaMart"), though without a space between the two generic words, is still perceived by the consuming public as "China mart". Even Plaintiff has admitted to using the two terms "China Mart" and "ChinaMart" interchangeably. Thus, these terms are legally equivalent. *See Weiss Noodle Co. v. Golden Cracknel and Specialty Co.*, 290 F. 2d 845, 846 (CCPA 1961) ("The registration was cancelled on the ground that 'Ha-Lush-Ka' is nothing more than a hyphenated, phonetically spelled version of the Hungarian word 'haluska'"). As such, both terms "China mart" and "Chinamart" are generic. *See In re Am. Fertility Soc'y*, 188 F.3d 1341, 1347 (Fed. Cir. 1999) ("[I]f the compound word would plainly have no different meaning from its constituent words, and dictionaries, or

other evidentiary sources, establish the meaning of those words to be generic, then the compound word too has been proved generic. No additional proof of the genericness of the compound word is required"). Consequently, this reason alone shows the terms "China mart" and "Chinamart" are generic when referring to China market or China trading center, or a place for selling or buying Chinese goods.

Beyond this, it is clear that by no means did Plaintiff coin the term "China mart." In fact, the term "China mart" has been used in a generic sense since at least as early as 1849 and 1858:

> "[F]or all the rich cargoes of furs and peltries thus to be collected annually over the vast expense were to be shipped in American vessels for the great China mart, there to be sold, and the proceeds invested in a return cargo of teas, silks, …" (see Exhibit F-1)

> "Pulo Pendang An India and China Mart"  (see Exhibit F-2)

> "[A] few only of the caravans continuing their journey southward to Madi, the China mart near Amarapoora…… And in 1831, Burney saw at the Madi China-mart *English* broadcloths, of various colours, but of coarse quality, having on them the trading seals of the East India Company……At his next and last visit to this Madi China mart ……"  (see Exhibit F-3)

Even into the modern times, the term "China mart" is still perceived as referring to a place for selling Chinese goods, or a China market. For instance, the U.S. retailer Wal-Mart and other retail stores are often referred to as a "China Mart" by the general consuming public because of their sales of large numbers of low cost Chinese goods:

> "[L]ow-cost production in China has been essential to the America's retailer's rise to global dominance. Cheap goods from Wal-Mart have also benefited penny-pinching U.S. consumers. Chinese-made goods have become so predominant in Wal-Mart, a chain that used to pride itself on selling American-made goods, the company might as well call itself China-Mart." (see Exhibit G)

> "Last spring I was in Walmart, which local talk show host Louie Free calls 'China mart.'" (see Ouyang Dec. ¶ 35 and Exhibit A-10)

Comments made by consumers in online media (see Ouyang Dec. ¶ 44 and Exhibit A-23):

> "Should Wal-Mart just become China-Mart"?
>  "Which China Mart-          Target, K Mart, Wal-Mart…Any other big chain store…"

"To say Wal Mart is the only 'China Mart' is an outright lie…"
"Canton, MI. Town With Chinese Name Votes For Bigger China-Mart"

From at least the 1850's up to present time, "China mart" and "China-mart" (or "Chinamart") have been and are perceived in their primary and generic meaning, that is, as referring to a China market or China trading center. If there is a business that the general consuming public might associate with the term "China mart" or "China-mart," it is Wal-Mart, K-Mart, or Target. Plaintiff is merely another China mart. Consequently, based on dictionary evidence and the historical and modern usages of the terms, it is clear that the terms "China mart" and "Chinamart" are generic when referring to China market or China trading center, or a place for selling or buying Chinese goods, and the Court should so hold. [4]

### E. Plaintiff's Alleged Marks "China Mart" and "ChinaMart" Are Generic When Used In Connection With Plaintiff's Recited Services in Plaintiff's Industry Context

Indeed, Plaintiff has chosen an appropriate name "ChinaMart" for its business as Plaintiff has claimed its ChinaMart is a "physical and virtual international trading center" (see Doc#6-4 for Page-ID#68). Its name perfectly describes its business. This is undeniable proof that Plaintiff has used its alleged marks in the generic meaning of the term "China mart." Moreover, Plaintiff's services recited in its federal registrations are primarily to assist Chinese manufacturers to sell their products in the U.S. (see Ouyang Dec. ¶ 48 and Exhibit A-27). Thus, since the term "China mart" is generic when referring to Chine trading center, the term is likewise generic for Plaintiff's recited services directed to assisting its Chinese customers for selling their products. This position is held by the Trademark Trial and Appeal Board ("the Board" or "TTAB"). *See In re Ryan M. Wiederstein,* Serial No. 85193002 (TTAB, 2013):

---

[4] As Defendant has used "ChinaMart.com" as an online China trading and shopping center, Defendant's use of "ChinaMart.com" is within this primary and generic meaning of the term "ChinaMart."

"The Board has held that a term which is the generic name of a particular category of goods is likewise generic for any services which are directed to or focused on that class of goods." *In re CyberFinancial.Net Inc.*, 65 USPQ2d 1789, 1791 (TTAB 2002) [BONDS.COM is generic for "providing information regarding financial products and services via a global computer network and providing electronic commerce services via a global computer network … with respect to taxable and tax exempt debt instruments" because the services encompass information about bonds]; *In re Web Communications*, 49 USPQ2d 1478 (TTAB 1998) [because WEB COMMUNICATIONS is generic for publication and communication via the World Wide Web, it is also generic for consulting services directed to assisting customers in setting up their own Web sites for such publication and communication].

Thus, Plaintiff's alleged marks are generic for its services recited in its registrations.

a) **Plaintiff's Alleged Marks Are Generic Based On The Two-Step Inquiry**

Plaintiff alleged marks are generic when tested with the two-step inquiry. "First, what is the category or class of the goods or services at issue? Second, is the term sought to be registered or retained on the register understood by the relevant public primarily to refer to that genus of goods or services?" *See H. Marvin Ginn Corp. v. International Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 989-90 (Fed. Cir. 1986).

The first question regarding the category of services at issue is easily answered. Plaintiff has defined "ChinaMart" as such: "What is ChinaMart? ChinaMart is a service and support platform to facilitate sales of U.S. and Chinese products between both countries" (see Ouyang Dec. ¶ 24 and Exhibit A-3). For the purpose of this motion, Defendant does not dispute that this accurately describes the type of services Plaintiff offers. Thus, the category of services at issue can be defined as a service and support platform to facilitate trading with China.

As to the second question, the relevant public is actual and potential purchasers of Plaintiff's services. Plaintiff has indicated its clients are "factories from China and US wholesalers who buy from" Plaintiff (see Exhibit D-2 for Interrogatory No.5). Thus, the relevant public is primarily Chinese companies who want to sell their products overseas and companies doing trading with China. Finally, as shown below, the relevant public understands that the term

"China Mart" or "ChinaMart" primarily refers to the type of services that Plaintiff provides. The specimens Plaintiff submitted to the PTO suggest that the recited services are offered primarily to assist Chinese companies to sell their products in the U.S. (see Ouyang Dec. ¶ 48 and Exhibit A-27).

First of all, Plaintiff itself understands that its alleged marks refer to its type of services. In its response to Defendant's interrogatories, Plaintiff stated that it "chose 'China Mart' and 'ChinaMart' as a name to suggest the types of services ChinaMart was to provide" (see Exhibit D-2 for Interrogatory No.11). This is clearly Plaintiff's admission that its alleged marks "China Mart" and "ChinaMart" are generic when referring to its services.

Plaintiff is not the first US company to set up a China mart and to refer to the term "China Mart" as the name for that type of services. As early as in 2004, a company in Florida, China Direct Trading Corp., had planned to open and manage a China Mart:

"China Direct Trading Corporation (OTCBB: CHDT) announced today that it has been approved by the China Ministry of Commerce (MOFCOM) to open and manage a China Mart in Dade or Broward County (South Florida) as a permanent showroom for the wares of Chinese manufacturers. Manufacturers will come to the U.S., man their showrooms, and sell their goods at overseas pricing……. China Direct will manage the operation, arrange for rental space for Chinese manufacturers and exporters, and assist U.S. retailers in sourcing needs from the China Mart." (see Ouyang Dec. ¶ 31 and Exhibit A-10)

Clearly, the term "China Mart" is used and understood by members of the industry as the name for the type of service involving accommodating, facilitating, housing, and offering other support services to facilitate Chinese companies intending to sell their products in the U.S. Additionally, by using the phrase "a China Mart," it is clear that members of the industry perceive that the term "China Mart" is a countable noun, i.e. a generic term.

In the media, a newspaper reported in 2009 that another company in St. Louis, Missouri had a plan to offer the same type of services and was being referred to as a "China mart":

"McKee's son, Chris McKee, president of the family's McEagle Properties, said a special commission of area leaders will travel to China early next month to discuss the proposed Lambert hub with Chinese airline officials. … Efforts are under way to raise money to build a $20 million to $30 million 'China mart' near the hotel at North Park, McKee said. The facility would contain showrooms and numerous small offices that companies doing business with China would use to display products and discuss deals." (see Ouyang Dec. ¶ 32 and Exhibit A-11)

Again, the perception of the term "China mart" by the media and the members of the industry is that the term refers to the kind of services (i.e. offering showrooms, offices and other supporting services) to help Chinese companies to sell their products in the US. And, once again, by using the term "China mart" as a countable noun and in using lower case "mart", the media and members of the industry make it clear that they perceive the term "China mart" as a generic term. Yet another example is a website www.chinamart.ae, created by a Chinese group in United Arab Emirates. This website uses the term "CHINAMART" and "chinamart" as the name of its digital magazine called "CHINAMART 杂志" (the Chinese word "杂志" means "magazine" in English), which covers information about China international trading (see Ouyang Dec.¶¶ 2, 3, 33 and Exhibit A-12). This descriptive use of "China mart" and "Chinamart" in newspapers and magazines is a strong indication of public perception and evidence that the term is generic. *See Murphy Door Bed Co. v. Interior Sleep Systems, Inc.*, 874 F.2d 95,101 (2d Cir. 1989).

Additionally, at least in 1998, 1999 and 2000, the term "China Mart" was used as the name of annual international export & import expo in China (see Ouyang Dec. ¶ 34 and Exhibit A-13). These trade shows were for foreign companies intending to do trading with Chinese companies. This is a strong indication that members in a society filled of Plaintiff's actual and potential purchasers perceive the term "China Mart" as a common descriptive name for the type of services, like Plaintiff's, intended to help sales and trading with China.

As more and more China Marts are being established worldwide, an organization called "Overseas China Marts Association (OCMA)" was created in China to promote China trading and cooperation among these overseas China Marts (see Ouyang Dec. ¶ 37 and Exhibit A-16). This is a strong indication that the term "China Mart" is generic when used in Plaintiff's industry as referring to the type of services that Plaintiff provides. The use of plural form of "China Marts" further proves that the term "China Mart" is generic.

As the name of the organization "Overseas China Marts Association" suggests, the term "China Mart" has been used by many China Marts in other countries offering the same type of services as Plaintiff provides, i.e., the facilitation and assistance of Chinese companies in the direct sale of their products outside China (see Ouyang Dec. ¶ 36 and Exhibit A-15). In fact, the term "China Mart" is so commonly understood to describe these services that many companies have chosen to use "China Mart" as their company names or to name their services. It is not hard to imagine that when all these China Marts reach out to their customers (i.e. Chinese companies), there is no way for Chinese companies to differentiate which China Mart they are dealing with. Given this confusion, these China Marts have had to find a way to identify themselves from other China Marts by other means such as adding their location or using different Chinese names. Plaintiff is a prime example. Plaintiff has chosen to use its location "洛杉矶" (i.e. "Los Angeles" in English) next to "中国商贸城" (i.e. "China Mart" in English) to identify itself (see Ouyang Dec.¶¶ 2,3,42 and Exhibit A-21). Other China Marts also used their locations to differentiate themselves (see Ouyang Dec.¶¶ 2, 3, 36 and Exhibit A-15). And a China Mart in Johannesburg of South Africa chose a Chinese name "百家商城" which is different from a direct translation of its English name "China Mart" (see Ouyang Dec.¶¶2,3,36 and Exhibit A-15-3).

Based on this overwhelming evidence, it is clear that the term "China Mart" cannot identify a source, not only to the general consuming public, but also to the relevant public in Plaintiff's industry. The fact that Plaintiff created its company name as "China Mart USA LLC" and also uses "China Mart Los Angeles" to identify itself shows Plaintiff's tacit awareness that the term "China Mart" is too generic to identify Plaintiff. As stated above, the two terms "China Mart" and "ChinaMart" are legally equivalent. Accordingly, under the Two-step inquiry test, it is clear that Plaintiff's alleged marks are generic and should be cancelled.

### b) Plaintiff's Alleged Marks Are Generic Based On "Who-are-you/What-are-you" Test

Another commonly used test under which a conclusion of genericness of Plaintiff's alleged marks can also be drawn is "Who-are-you/What-are-you" test. "A mark answers the buyer's questions 'Who are you?' 'Where do you come from?' 'Who vouches for you?' But the [generic] name of the product answers the question 'What are you?'" *See Filipino Yellow Pgs. v. Asian Journal Publications*, 198 F. 3d 1143, 1147 (9th Cir. 1999). For this test, one need go no further than Plaintiff's own statements. Plaintiff has unambiguously referred its alleged mark "ChinaMart" as "What," not "Who" and has defined what it is:

> "What is ChinaMart?    ChinaMart is a service and support platform to facilitate sales of U.S. and Chinese products between both countries." (see Ouyang Dec. ¶ 24 and Exhibit A-3)

Plaintiff has asked the right question and answered it appropriately. When a company, including Plaintiff's competitors who offer services in assisting Chinese companies selling their products, is asked the question "What are you?" it would be entirely appropriate to respond "We are China mart" or "We are a China mart." *See Advertise.com, Inc. v. AOL Advertising, Inc.*, 616 F. 3d 974, 978 (9th Cir. 2010). China marts in South Florida, St. Louis and other parts of the

world can respond "We are a China mart" to the question "What are you?" as comfortably as Plaintiff does. This test further shows that the terms "China mart" and "ChinaMart" are generic.

### c) Plaintiff Has Primarily Used Term "China Mart" or "ChinaMart" In The Generic Sense of The Word

Clearly, Plaintiff has used its alleged marks in their generic sense when referring to itself as an "international trading center" in facilitating the trading with China. As generic as it is when used in Plaintiff's industry context, Plaintiff cannot avoid its own generic uses: "ChinaMart® Los Angeles has launched … bringing Chinese companies into the U.S…. It is now a fully operational physical and virtual international trading center" (see Doc#6-4 for Page-ID#68).

In addition, on its "Frequent Asked Questions" page, Plaintiff has even used the term "ChinaMart" to refer to a ChinaMart in Russia (see Ouyang Dec.¶ 38 and Exhibit A-17):

"Q: How secure is the U.S. market from Government changes like the Russian government's closure of its ChinaMart?     A: U.S. government is most stable government in the World …"

Plaintiff's own generic use is a strong indication that its alleged marks are generic. [5] *See Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F. 3d 1, 20 (1st Cir. 2008) ("Boston Duck's own generic use of the phrase 'duck tour,' which provides strong evidence against its claim that the term is primarily associated with its company rather than the services it provides"); *see also Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 545-547 (4th Cir.2004) ("[E]vidence of the owner's generic use, in particular, 'is strong evidence of genericness.'"). "Even though defendants do not directly distribute free products or 'freebies,' their business nonetheless revolves around 'freebies' in the generic sense of the word"); *see also In Re Reed Elsevier Properties Inc*, 482 F.3d 1376 (2007).

---

[5] This fact has also estopped Plaintiff from arguing its alleged marks are not generic.

**d) Competitors' Needs to Use The Term "China Mart" To Describe Their Businesses**

There is a strong need for Plaintiff's competitors to use the term "China mart". In Florida alone, three companies have used "China Mart" as their business names: "China Mart, Inc", "China Mart, LLC", and "ChinaMart.com Inc." (see Ouyang Dec.¶ 39 and Exhibit A-18). In Plaintiff's home state of California, three companies were named: "China Direct Mart Inc.", "China Web Mart, Inc.", "China World-Mart Inc." (see Ouyang Dec.¶ 40 and Exhibit A-19). There are also other online ChinaMarts (see Ouyang Dec.¶¶25-30,46 and Exhibits A-4 – A-9, A-25). The existence of these companies shows that others do use and need to use the term "China Mart" or "ChinaMart" to describe their services. With China's economy rapidly growing, more and more companies will do business with China, and the need to use the common descriptive name "China Mart" for China trading or the type of services offered by Plaintiff and others will only continue to grow. Granting Plaintiff the exclusive right to use the generic term "China Mart" or "ChinaMart" would prevent other businesses from using these two terms to describe their services (e.g., Defendant) or offering services similar to those of Plaintiff (e.g., China Marts in South Florida and St. Louis and others). This would be unfair. And, in fact, this unfairness is already occurring. On January 27, 2010, Plaintiff sent cease and desist letters to four companies nationwide who have used the term "China Mart" as their business names (see Exhibit D-5). Thus, Plaintiff's registrations have caused harm to business communities, free competition, and the public interest. It is leaving companies who want to set up a China trading center, or provide related services, without an appropriate name to call themselves or describe the nature of their businesses. As such, this inequity should be undone and the generic terms "China Mart" and "ChinaMart" should be returned to the public domain. *See Nartron Corp. v. Stmicroelectronics Inc.*, 305 F. 3d 397 ("To allow protection for generic terms would grant 'a monopoly, since a

competitor could not describe his goods as what they are'."); *see also A. J. Canfield v. Honickman*, 808 F.2d 291,304 (3rd Cir. 1986) ("Courts refuse to protect a generic term because competitors need it more to describe their goods than the claimed markholder needs it to distinguish its goods from others.")

Accordingly, Defendant respectfully requests the Court cancel Plaintiff's trademark registrations (Reg. Nos. 3537975 and 4011626) in the international classes 035, 036 and 045, and put the two generic terms back to the public domain, pursuant to 15 USC §1064(3).

**F. Plaintiff's Registrations Should Be Cancelled Because Its Alleged Marks Are Merely Descriptive and Because Plaintiff Obtained Its Registrations Fraudulently**

Even if Plaintiff's alleged marks are not generic, they are merely descriptive at best. A mark is merely descriptive under 15 U.S.C. §1052(e)(1) if it describes an ingredient, quality, characteristic, function, feature, purpose or use of the specified services. *In re Gyulay*, 820 F.2d 1216 (Fed. Cir. 1987). This issue of the descriptiveness of Plaintiff's alleged marks has been raised after Plaintiff first filed its application with the PTO to register "China Mart" on June 12, 2007. One of those reasons for Section 2(e)(1) refusal was because "[a]pplicant's services are to advance the interests of the country China in the United States market" (see Doc #6-5 for Exhibit 5). In order to obtain the registration, Plaintiff replied and made the statement that its services "do not relate to a market for goods" (see Doc #6-5 for Exhibit 6). [6] Once approved by the PTO, Plaintiff submitted its statement of use with a specimen that states "China Mart's main goal is to grow its Chinese Manufactures sales in the US." (see Ouyang Dec. ¶ 48 and Exhibit A-27-1). Plaintiff did not wait long to admit that its recited services (i.e., "assisting foreign businesses in

---

[6] Plaintiff's statement points to the unfairness of this lawsuit. To obtain a registration, it stated that its services "do not relate to a market for goods". Now Plaintiff seeks to stop Defendant from using the chinamart.com domain in ways that relate to a market for goods. Plaintiff should be estopped from bringing this two-faced claim.

entering the United States market") primarily relate to "China", "mart" and "China mart". Plaintiff's subsequent uses of its alleged mark have also proven that its statement (i.e. its services "do not relate to a market for goods") was false (see Ouyang Dec.¶48 and Exhibit A-27-2, and Exhibit D-3 for Req.No.6 for Bates No. AMC000025- AMC000026). Plaintiff was able to overcome the Examining Attorney's descriptiveness objection only by making a false statement so as to avoid the issue. Plaintiff had misled the PTO attorney into believing its services "do not relate to a market for goods" and thus fraudulently obtained the registration which should be cancelled.

With regard to Plaintiff's application to register "CHINAMART" (Reg. No. 4011626), though there is no space between the generic words "CHINA" and "MART," the term is perceived as and is legally equivalent to the term "China Mart", as stated above. In addition, although the wording "assisting foreign businesses in entering the United States market" does not appear in its recited services, it is undisputed that Plaintiff's recited services are to support or assist Chinese companies to enter the U.S. market, as shown in the specimen submitted by Plaintiff (see Ouyang Dec. ¶ 48 and Exhibit A-27-2). Thus, Plaintiff's alleged mark "ChinaMart" is also merely descriptive of the recited services, as Plaintiff primarily uses its alleged marks in ways that relate to sales of Chinese goods as well as China market.

"Descriptiveness of a mark is not considered in the abstract. Rather, it is considered in relation to the particular goods for which registration is sought, the context in which it is being used, and the possible significance that the term would have to the average purchaser of the goods because of the manner of its use or intended use." *See In re Bayer Aktiengesellschaft*, 488 F. 3d 960,963,964 (Fed. Cir. 2007); *see also In re Abcor Dev. Corp.*, 588 F.2d 811, 813-14 (CCPA 1978); *see also In re MBNA Am. Bank N.A.*, 340 F.3d 1328, 1332 (Fed. Cir.2003).

Plaintiff's alleged marks "China Mart" and "ChinaMart" have been used in the context of a China trading center and in the manner of a China trading center. Additionally, third parties have used the terms "China Mart" and "ChinaMart" for their businesses and the need for competitors to use these two terms to describe their services exists and will only grow as more companies do business with China. Maintaining Plaintiff's registrations will prevent others from using the term to describe their services. Although a merely descriptive mark may be registrable if it has acquired the distinctiveness, for all the reasons argued for Defendant's genericness claims, Plaintiff's alleged marks could not have possibly acquired distinctiveness. Thus, Plaintiff's alleged marks should not have been registered and Plaintiff's registrations (Reg. Nos. 3537975 and 4011626) should be cancelled, pursuant to 15 USC §§1052 (e)(1), 1064(1), and 1064(3). Additionally, Plaintiff is liable to civil action pursuant to 15 U.S.C. § 1120.

G. **Plaintiff's Alleged Marks Were Not Distinctive at the Time of Registration of The Domain Name "CHINAMART.COM", Defendant's Use of its Domain Name is a Fair Use and Lawful, and Defendant Has Not Violated the ACPA**

As stated above, Plaintiff's cyberpiracy claims are barred by the statute of limitations and laches. In addition, Plaintiff's alleged marks "China Mart" and "ChinaMart" are generic or merely descriptive and subject to cancellation. Without a valid trademark, Plaintiff cannot state a claim under the Anticybersquatting Consumer Protection Act ("ACPA"). *See Retail Services, Inc. v. Freebies Publishing*, 364 F. 3d 535, 549 (4th Cir. 2004) ("We need go no farther than the district court's initial conclusion that defendants cannot state a claim under the ACPA without a valid trademark. This conclusion is compelled from the statutory language").

Beyond this, even Plaintiff has a valid mark, Defendant has not violated the ACPA because Defendant has the superior rights to use "ChinaMart.com" which has been used as a trade name by Defendant's predecessors and Defendant since April 2005 (see Exhibit B and Ouyang Dec. ¶¶

5-10). Moreover, Defendant has used "ChinaMart.com" in its primary meaning to describe its services, i.e. an online China trading center. 15 USC §1125(d)(1)(B)(ii) permits Defendant's use of the domain name because it is a fair use and lawful. [7]  Furthermore, Defendant's domain name "chinamart.com" was initially registered as early as in 1998. Even considering the time of registration of the domain name to be April 2005 when Defendant's predecessor Mr. Rohland bought and used it in commerce (see Exhibit B), it was still long before Plaintiff's alleged first use of its alleged marks (Plaintiff claimed its first use date as September 1, 2006 and has admitted it has not used its alleged marks prior to 2006 (see Doc #1-2 and Exhibit D-3 for Req. No.1)). In *GoPets Ltd. v. Hise*, the U.S. Court of Appeals for the Ninth Circuit outlined a 3-condition test for determining whether a claim can successfully be brought under the act:

> "To prevail on its ACPA claim, Go-Pets Ltd. must show (1) registration of a domain name, (2) that was 'identical or confusingly similar to' a mark that was distinctive *at the time of registration*, and (3) 'bad faith intent' at the time of registration. See 15 U.S.C. § 1125(d)(1)" [emphasis in original]. *See GoPets Ltd.*, 657 F. 3d 1024,1030 (9th Cir. 2011).

Additionally, the Court held that "registration" in ACPA meant the "initial registration" of the domain name. The Circuit Court went on to explain this holding:

> "Looking at ACPA in light of traditional property law, however, we conclude that Congress meant 'registration' to refer only to the initial registration. It is undisputed that [the defendant's predecessor in interest] could have retained all of his rights to gopets.com indefinitely if he had maintained the registration of the domain name in his own name. We see no basis in ACPA to conclude that a right that belongs to an initial registrant of a currently registered domain name is lost when that name is transferred to another owner. The general rule is that a property owner may sell all of the rights he holds in property. [The plaintiff's] proposed rule would make rights to many domain names effectively inalienable, whether the alienation is by gift, inheritance, sale, or other form of transfer. Nothing in the text or structure of the statute indicates that Congress intended that rights in domain names should be inalienable." *See GoPets Ltd.*, 657 F. 3d at 1031, 1032 (9th Cir. 2011).

As such, transferring a domain name does not change the domain registration date for the purpose of the act. To win the ACPA claim, Plaintiff must show (1), (2), and (3) as outlined by

[7] For these and other foregoing reasons, Defendant should be granted a declaratory judgment that Defendant has not infringed Plaintiff's alleged trademark rights even if Plaintiff's alleged marks are valid.

the Circuit Court. However, Plaintiff cannot show (2) because at the time of registration of the "chinamart.com" domain name (i.e. January 23, 1998), Plaintiff's marks were not even used, and thus could not be distinctive at that time. Even if the time of domain registration was considered to be April 2005, when Mr. Rohland began using the site in commerce (see Exhibit B), Plaintiff's alleged marks were still not used (see Exhibit D-3 for Req. No.1 and Doc #1-2), and thus cannot be distinctive at the time. Plaintiff simply cannot show (2). Consequently, Plaintiff cannot win its ACPA claim and its cyberpiracy claims must be dismissed.

### H. <u>Defendant is Entitled to an Award of Attorney Fees, Damages, and Costs</u>

Based on Plaintiff's litigation conduct or pre-litigation assertion of rights, the Court should consider this case as an exceptional case. *See Retail Services, Inc. v. Freebies Publishing*, 364 F. 3d 535,550 (4th Cir. 2004) ("Thus, the focus tends to be on the plaintiff's litigation conduct or pre-litigation assertion of rights"). Plaintiff's CEO and founder, Mr. Stephen Perl, appears to be an expert in doing trading with China as he has written a book about how to do business with China (see Exhibit H). Mr. Perl knew or should have known the term "China Mart" is widely used as a common descriptor for services related to China trading. Despite this, Plaintiff chose to trademark the generic portion "China Mart" of its company name and further misled the PTO into believing that its services "do not relate to a market for goods", thereby fraudulently obtaining its trademark registrations. Plaintiff has also illegally used its alleged marks with the registered symbol ® for services not covered in its recited services and has even illegally used the registered symbol ® next to terms that it has never registered. [8] It is clear that Plaintiff is trying to use its fraudulently obtained marks, misuse them, and mislead the public and

---

[8] Exhibit D-3 with Bates No. AMC000028 shows Plaintiff's illegal use of the registered sign next to its Chinese name "中国洛杉矶商贸城®（简称中国商贸城®）" that it has not registered; Exhibit A-24 shows Plaintiff's illegal use of the registered sign for its publishing service and for the term "China Mart USA ®" that it has also not registered.

competitors into believing that it has exclusive rights to use its alleged marks and other terms for all its services. Additionally, Plaintiff has used this litigation in an effort to force Defendant to give up its domain name. Furthermore, without Defendant's permission, Plaintiff has even used Defendant's tradename "ChinaMart.com" on Plaintiff's website to mislead consumers into believing that "ChinaMart.com" belongs to Plaintiff (see Doc #6-5 for Exhibit 10 (with the wording "New to ChinaMart.com?" shown on Plaintiff's website prominently)). This shows Plaintiff's bad faith attempts to induce customer confusion. Finally, Plaintiff has filed this frivolous lawsuit even when it knew the prior use of Defendant's domain and after Defendant had invested considerable amount of money and time in running its business for five years.

For the foregoing reasons, this case is exceptional. Defendant is entitled to an award of attorney fees, damages, and costs, pursuant to 15 USC §1120 and other applicable laws.

## IV.    CONCLUSION

Based on the above information and evidence of record, there is no genuine issue of material fact that remains for trial, and Defendant is entitled to summary judgment as a matter of law. Defendant respectfully requests the Court grant the relief requested in its Motion.

Respectfully Submitted

Dated: <u>September 30, 2013</u>                AmeriCareers LLC d/b/a China Mart LLC

By:   <u>/s/ Nicholas D. Bowman</u>
Nicholas D. Bowman
Waters & Associates PLC
305B Waters Building
161 Ottawa Ave., N.W.
Grand Rapids, MI 49503
Tel: (616) 242-9550
Email: nick@waters-ip.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**CHINA MART USA LLC**
a California limited liability company,

          Plaintiff and Counterclaim Defendant,

v.

**AMERICAREERS, LLC d/b/a CHINA MART, LLC**
a Michigan limited liability company,

          Defendant and Counterclaim Plaintiff.

**CASE NO:  1:12-cv-00968**

**Hon. Robert J. Jonker**

_____/

| | |
|---|---|
| John A. VanOphem (P48804) | Nicholas D. Bowman (P74964) |
| Attorney for Plaintiff and Counterclaim Defendant | Attorney for Defendant and Counterclaim Plaintiff |
| **Bejin VanOphem & Bieneman PLC** | **Waters & Associates PLC** |
| 300 River Place Dr., Ste 1650 | 305B Waters Building |
| Detroit, MI  48207 | 161 Ottawa Ave., N.W. |
| Phone: (313) 528-4882 | Grand Rapids, MI 49503 |
| Fax: (313) 528-6982 | Tel: (616) 242-9550 |
| vanophem@bvbip.com | Fax: (616) 855-0954 |
| | nick@waters-ip.com |

_____/

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 30, 2013, I electronically filed AmeriCareers LLC's Brief In Support of Its Motion for Summary Judgment and the exhibits attached thereto with the Court, using the ECF system which will send notification of such filing to all attorneys of record.

                           /s/ Nicholas D. Bowman___
                        Nicholas D. Bowman
                        Waters & Associates PLC
                        305B Waters Building
                        161 Ottawa Ave., N.W.
                        Grand Rapids, MI 49503
                        Tel: (616) 242-9550
                        Email: nick@waters-ip.com